UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------X

Lennox Murray, *on behalf of himself and others similarly situated*

*Plaintiff*,

-against-

Creative Industries Corporation, Merrimaker Corporation, Rudd Realty Management Corp., Joshua Greenberg, and The Estate of Frederick J. Rudd

*Defendants*.

------------------------------------------------X

Case No.: 1:24-cv-07862

**COMPLAINT**

Plaintiff Lennox Murray ("Plaintiff" or "Murray"), by and through the undersigned attorneys, Morrison Tenenbaum PLLC., upon personal knowledge as to himself and upon information and belief as to others, brings this complaint against Defendants Creative Industries Corporation, Merrimaker Corporation, Rudd Realty Management Corp. (the "Corporate Defendants") Joshua Greenberg, and The Estate of Frederick J. Rudd (the "Individual Defendants", and collectively, the "Defendants"), and states as follows:

**NATURE OF THE ACTION**

1. Plaintiff brings this lawsuit seeking recovery, against Defendants' violations of the FLSA, and violations of Articles 6 and 19 of the NYLL and their supporting NYDOL regulations.

2. Plaintiff seeks injunctive and declaratory relief and to recover unpaid overtime wages, spread-of-hours, liquidated and statutory damages, pre- and post-judgment interest, and attorneys' fees and costs pursuant to the FLSA, NYLL, and the NYLL's Wage Theft Prevention Act ("WTPA").

**JURISDICTION AND VENUE**

3. The Court has subject matter jurisdiction of this case pursuant to 29 U.S.C. § 216(b), 28 U.S.C. § 1331 and 28 U.S.C. § 1337, and has supplemental jurisdiction over Plaintiff's claims under the NYLL pursuant to 28 U.S.C. § 1367(a).

4. This Court has federal question jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the FLSA.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) and (c), because all events relevant to this action occurred in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## THE PARTIES

**PLAINTIFF LENNOX MURRAY**

6. Plaintiff Murray was employed as a building superintendent, at Defendants' residential apartment buildings located at 144-142 West 4th Street ("144-142 W. 4th Street"), 140 West 4th Street ("140 W. 4th Street" and together with 1440142 W. 4th Street, "4th Street Buildings"), 28 Bedford St ("28 Bedford"), 90 Bedford St. ("90 Bedford", and together with 28 Bedford, the "Bedford Buildings" and together with the 4th Street Buildings, the "Buildings"), all in New York, NY.

7. Plaintiff Murray was employed as a non-managerial employee at Defendants' residential apartment buildings from on or around December 2006 to, through and including, September 25, 2024.

8. At all relevant times, Plaintiff has been an employee within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

**DEFENDANT CREATIVE INDUSTRIES CORPORATION**

9. Upon information and belief, Defendant Creative Industries Corporation is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains a principal place of business at: 641 Lexington Ave., 10th Floor, New York, NY 10022.

10. At all times relevant to this Complaint, Defendant Creative Industries Corporation: (i) has had and continues to have employees engaged in commerce or in the production of goods and services for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and (ii) has had and continues to have an annual gross volume of sales of not less than $500,000.00.

11. At all times relevant to this Complaint, Defendant Creative Industries Corporation was and is a covered employer within the meaning of the FLSA, 29 U.S.C. § 203(d) and, at all times relevant to this Complaint, employed employees, including Plaintiff.

12. At all times relevant to this Complaint, Defendant Creative Industries Corporation was and is an employer within the meaning of the 29 U.S.C. 201 *et seq.* and NYLL Section 190(3), and employed employees, including Plaintiff.

13. Defendant Creative Industries Corporation possessed substantial control over Plaintiff's working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiff, and all similarly situated individuals, referred to herein.

14. Defendant Creative Industries Corporation had the power to hire and fire Plaintiff, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for Plaintiff's services.

**DEFENDANT MERRIMAKER CORPORATION**

15. Upon information and belief, Defendant Merrimaker Corporation is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains a principal place of business at: 641 Lexington Ave., 10th Floor, New York, NY 10022.

16. At all times relevant to this Complaint, Defendant Merrimaker Corporation: (i) has had and continues to have employees engaged in commerce or in the production of goods and services for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and (ii) has had and continues to have an annual gross volume of sales of not less than $500,000.00.

17. At all times relevant to this Complaint, Defendant Merrimaker Corporation was and is a covered employer within the meaning of the FLSA, 29 U.S.C. § 203(d) and, at all times relevant to this Complaint, employed employees, including Plaintiff.

18. At all times relevant to this Complaint, Defendant Merrimaker Corporation was and is an employer within the meaning of the 29 U.S.C. 201 *et seq.* and NYLL Section 190(3), and employed employees, including Plaintiff.

19. Defendant Merrimaker Corporation possessed substantial control over Plaintiff's working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiff, and all similarly situated individuals, referred to herein.

20. Defendant Merrimaker Corporation had the power to hire and fire Plaintiff, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for Plaintiff's services.

**DEFENDANT RUDD REALTY MANAGEMENT CORP.**

21. Upon information and belief, Defendant Rudd Realty Management Corp. is a

domestic limited liability company organized and existing under the laws of the State of New York. Upon information and belief, it maintains a principal place of business at: 641 Lexington Avenue, 10th Floor, New York, NY 10022.

22. At all times relevant to this Complaint, Defendant Rudd Realty Management Corp.: (i) has had and continues to have employees engaged in commerce or in the production of goods and services for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and (ii) has had and continues to have an annual gross volume of sales of not less than $500,000.00.

23. At all times relevant to this Complaint, Defendant Solar Transport, LLC was and is a covered employer within the meaning of the FLSA, 29 U.S.C. § 203(d) and, at all times relevant to this Complaint, employed employees, including Plaintiff.

24. At all times relevant to this Complaint, Defendant Rudd Realty Management Corp. was and is an employer within the meaning of the 29 U.S.C. 201 *et seq.* and NYLL Section 190(3), and employed employees, including Plaintiff.

25. Defendant Rudd Realty Management Corp. possessed substantial control over Plaintiff's working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiff, and all similarly situated individuals, referred to herein.

26. Defendant Rudd Realty Management Corp. had the power to hire and fire Plaintiff, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for Plaintiff's services.

**DEFENDANT JOSHUA GREENBERG**

27. Defendant Joshua Greenberg is an individual engaging (or who was engaged) in business within this judicial district during the relevant time period.

28. Defendant Joshua Greenberg is sued individually and in his capacity as an owner, officer and/or agent of the Corporate Defendants.

29. Defendant Joshua Greenberg controlled significant functions of the Corporate Defendants.

30. Defendant Joshua Greenberg determined the wages and compensation of employees, including Plaintiff, established the schedules of employees, maintained employee records, and had the authority to hire and fire employees.

31. At all times relevant to this Complaint, Defendant Joshua Greenberg was and is an employer within the meaning of the 29 U.S.C. 201 *et seq.* and NYLL Section 190(3), and employed employees, including Plaintiff.

**DEFENDANT THE ESTATE OF FREDERICK J. RUDD**

32. Frederick J. Rudd, now deceased, was an individual engaging (or who was engaged) in business within this judicial district during the relevant time period.

33. Defendant The Estate of Frederick J. Rudd is sued individually and in their capacity as an owner, officer and/or agent of the Corporate Defendants.

34. Frederick J. Rudd possessed operational control over the Corporate Defendants, or controlled significant functions of the Corporate Defendants.

35. Frederick J. Rudd determined the wages and compensation of employees, including Plaintiff, established the schedules of employees, maintained employee records, and had the authority to hire and fire employees.

36. At all times relevant to this Complaint, Frederick J. Rudd was an employer within the meaning of the 29 U.S.C. 201 *et seq.* and NYLL Section 190(3), and employed employees, including Plaintiff.

**DEFENDANTS CONSTITUTE JOINT EMPLOYERS**

37. Defendants own, operate, manage, and/or control residential apartment buildings.

38. The Individual Defendants possess operational control over the Corporate Defendants, possess an ownership interest in the Corporate Defendants, and/or control significant functions of the Corporate Defendants.

39. Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

40. Each Defendant possessed substantial control over Plaintiff's working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiff, and all similarly situated individuals, referred to herein.

41. Defendants jointly employed Plaintiff, and all similarly situated individuals, and are Plaintiff's employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

42. In the alternative, Defendants constitute a single employer of Plaintiff and/or similarly situated individuals.

43. Upon information and belief, the Individual Defendants operate the Corporate Defendants as either an alter ego of themselves, and/or fail to operate the Corporate Defendants entities legally separate and apart from themselves, by, among other things

    a. failing to adhere to the corporate formalities necessary to operate the Corporate Defendants separate and legally distinct entities;

    b. defectively forming or maintaining the Corporate Defendants, by among other things failing to hold annual meetings or maintaining appropriate corporate records;

    c. transferring assets and debts freely as between all Defendants;

    d. operating the Corporate Defendants for their own benefit as the majority shareholders;

    e. operating the Corporate Defendants for their own benefit and maintaining

    control over it as closed corporations or closely controlled entities;

  f. intermingling assets and debts of their own with the Corporate Defendants;

  g. diminishing and/or transferring assets of the Corporate Defendants to protect their own interests; and

  h. other actions evincing a failure to adhere to the corporate form.

44. At all relevant times, Defendants were Plaintiff's employers within the meaning of the FLSA and NYLL.

45. Defendants had the power to hire and fire Plaintiff, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for Plaintiff's services.

## FACTUAL ALLEGATIONS

46. Plaintiff was an employee of Defendants.

47. Plaintiff was employed as a building superintendent at the Buildings, each of which was owned and/or managed by Defendants.  Each of the Buildings was a multi-family residential building with numerous units:

  a. 142 West 4th – 24 units

  b. 140 West 4th St – 24 units

  c. 28 Bedford St- 32 units

  d. 90 Bedford – 26 units

48. From approximately December 2006 to, through and including, March 2020, Plaintiff worked at all four of the Buildings and was responsible for the maintenance of all 106 residential units.  Plaintiff typically worked seven days per week: from 8:00 a.m. to approximately 5:00 p.m. Monday through Friday, plus additional hours outside of regular work hours depending on the needs at the buildings he worked at, plus additional hours on Saturdays and Sundays

depending on the needs of the buildings he worked at for a total period of approximately 50 to 52 hours during each of the weeks, respectively.

49. As a building superintendent, Plaintiff regularly performed manual labor, including taking out trash, cleaning, and making repairs.

50. In 2018, Defendants presented a written offer of employment purporting to pay Plaintiff thirty ($30) per hour. Defendants never paid Plaintiff this amount.

51. In 2020, Plaintiffs sold the 4th Street Buildings, reducing the Plaintiff's responsibilities from 106 residential units to 58 residential units. As a result of the sale of the 48 residential units, Defendants cut Plaintiff's salary by fifty percent (50%).

52. Following the reduction in salary, the Plaintiff's hours were supposedly reduced to forty (40) hours. Notwithstanding the Plaintiff being told that his hours would be reduced to forty, he was routinely required to work additional hours, including weekends, for which he was not compensated.

53. In December, 2023, the Defendants further sold 90 Bedford. Again, Plaintiff's hours were not reduced. Defendants, however, further reduced his salary. Plaintiff was asked to remain working at 28 Bedford on a part time basis for no additional consideration. Plaintiff was forced to agree to this arrangement as he was informed that the purchaser of 28 Bedford was looking to purchase 90 Bedford, and Plaintiff inferred he would need to impress the new owners to retain his station.

54. Plaintiff's employment was terminated on or about September 25, 2024.

55. During all relevant times, through and including, the termination of his employment on September 25, 2024, Plaintiff was supposed to work Monday through Friday starting at 8:00 a.m. and ending between 4:00 p.m. and 5:00 p.m. for a total of only forty (40) hours per work

week.  Plaintiff was also supposed to be given a means to record his hours.  However, Plaintiff was never given a system to record his hours, and Plaintiff was routinely required to exceed forty hours a week, including night and weekend work.  Indeed, Plaintiff was "on call" at all hours, and worked approximately 45 to 52 hours per week, depending on the week.

56. In 2018, Plaintiff was paid a flat weekly rate of approximately $1,175 per week, regardless of the number of hours he worked each week.

57. In 2019, Plaintiff was paid a flat weekly rate of approximately $1,200 per week, regardless of the number of hours he worked each week.

58. In 2020, Plaintiff was paid a flat weekly rate of approximately $1,350 per week, regardless of the number of hours he worked each week.

59. From approximately 2021 through the date of his termination, Plaintiff was paid a flat weekly rate of $600 per week, regardless of how many hours he worked each week.

60. At all relevant times, Plaintiff was paid in check.

61. At all relevant times, Plaintiff was paid every two weeks,

62. At all relevant times, Defendants did not pay Plaintiff at the rate of one and one-half times their hourly wage rate for hours worked in excess of forty per workweek.

63. Defendants did not state the correct gross wages, as defined by NYLL, for any employee on any pay statement as required by NYLL or deductions from the correct gross wages.

64. No notification, either in the form of posted notices, or other means, was ever given to Plaintiff regarding wages are required under the FLSA or NYLL.

65. Defendants did not provide Plaintiff a statement of wages, as required by NYLL 195(3).

66. Defendants did not give any notice to Plaintiff of his rate of pay, employer's regular

pay day, and such other information as required by NYLL § 195(1).

67. Defendants' failure to provide accurate wage notices and accurate wage statements denied Plaintiff their statutory right to receive true and accurate information about the nature of their employment and related compensation policies.

68. Moreover, Defendant's breach of these obligations injured Plaintiff by denying Plaintiff the right to know the conditions of his compensation, resulting in the underpayment of wages.

### FIRST CLAIM
### (FLSA – Unpaid Overtime Wages, 29 U.S.C. §§ 201 *et seq*.)

69. Plaintiff repeats and incorporates all foregoing paragraphs as if fully set forth herein.

70. At all relevant times to this action, Plaintiff was a covered, non-exempt employee within the meaning of the FLSA.

71. Defendants were required to pay Plaintiff one and one-half (1 1/2) times the regular rate at which Plaintiff was employed for all hours worked in excess of forty hours in a workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207, et seq.

72. Defendants failed to pay Plaintiff the overtime wages to which he is entitled under the FLSA.

73. Defendants willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiff overtime wages.

74. Due to Defendants' willful violations of the FLSA, Plaintiff is entitled to recover their unpaid overtime wages, liquidated damages, reasonable attorney's fees and cost of the action and pre-judgment and post-judgment interest.

### SECOND CLAIM

**(NYLL – Unpaid Minimum Wages)**

75. Plaintiff repeats and incorporates all foregoing paragraphs as if fully set forth herein.

76. Plaintiff was a resident janitor within the meaning of the NYLL and supporting New York Department of Labor ("NYDOL") Regulations.

77. Under the NYLL and supporting NYDOL Regulations, Defendants were required to pay Plaintiff specific per unit rates.

78. Defendants failed to pay Plaintiff the wages to which he is entitled under the NYLL.

79. Defendants willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiff overtime wages.

80. Due to Defendants' willful violations of the NYLL, Plaintiff is entitled to recover his unpaid unit wages, liquidated damages, reasonable attorney's fees and cost of the action and pre-judgment and post-judgment interest.

**THIRD CLAIM**
**(NYLL WTPA– Failure to Provide Wage Notices)**

81. Plaintiff repeats and incorporates all foregoing paragraphs as if fully set forth herein.

82. The NYLL and the WTPA require employers to provide all employees with a written notice of wage rates at the time of hire.

83. In violation of NYLL §195 (1), Defendants failed to furnish to Plaintiff at the time of hiring, or whenever their rate(s) of pay changed, with a wage notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other, allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL §191; the

name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address, if different; the telephone number of the employer, and anything otherwise required by law.

84. Due to Defendants' violations of NYLL §195 (1), Plaintiff is entitled to recover his liquidated damages, reasonable attorney's fees and cost and disbursement of the action, pursuant to the NYLL §198 (1-b).

## FOURTH CLAIM
### (Violation of the Wage Statement Provisions of the NYLL)

85. Plaintiff repeats and incorporates all foregoing paragraphs as if fully set forth herein.

86. With each payment of wages, Defendants failed to provide Plaintiff with a statement listing each of the following the dates of work covered by the payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; the number of regular hours worked; the number of overtime hours worked, as required by the NYLL § 195(3).

87. As a result of Defendant's violation of the WTPA, Plaintiff is entitled to damages of at least $250 per day during which the violations occurred.

## FIFTHH CLAIM
### (Violation of the Timely Payment Provisions of the NYLL)

88. Plaintiff repeats and incorporates all foregoing paragraphs as if fully set forth herein.

89. The timely payment of wages provisions NYLL § 191 and its supporting regulations apply to Defendants and protect Plaintiff.

90. Defendants' failed to pay Plaintiff on a timely basis as required by NYLL § 191(1)(a). Plaintiff was a manual worker within the definition of the statute, and was required to be paid on a weekly basis. Instead, Defendants paid Plaintiff every two weeks.

91. Due to Defendants' violations of the NYLL, Plaintiff is entitled to recover from Defendants the amount of his untimely paid wages as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff, respectfully requests that this Court enter a judgment:

a. declaring that Defendants violated the overtime wage provisions of the FLSA, and the minimum wage provisions of the NYLL and the NYDOL regulations;

b. declaring that Defendants violated the wage notice and wage statement pay provisions of the NYLL and WTPA;

c. declaring that Defendants violated the timely payment provisions of the NYLL and WTPA;

d. awarding Plaintiff unpaid overtime wages;

e. awarding Plaintiff liquidated damages in an amount equal to the total amount of wages found to be due;

f. awarding unpaid wages under the NYLL;

g. awarding Plaintiff statutory damages as a result of Defendants' failure to furnish accurate wage notice pursuant to the NYLL;

h. awarding Plaintiff the amount of untimely paid wages as liquidated damages;

i. awarding Plaintiff pre- and post-judgment interest under the NYLL;

j. providing that if the judgment is not paid within 90 days, the amount of the judgment shall be increased by 15% pursuant to the NYLL;

k. awarding Plaintiff reasonable attorneys' fees and the costs and disbursements of this action; and

l. Such other relief as this Court deems just and proper.


Dated: New York, New York
October 16, 2024

Respectfully submitted,

MORRISON TENENBAUM, PLLC

By: _____
Lawrence F. Morrison, Esq.

87 Walker St., Floor 2
New York, New York 10013
Tel: (212) 620-0938
Lmorrison@m-t-law.com